IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FARZAD K., | ) |
| Plaintiff, | ) ) ) No. 20-cv-2594 |
| v. | ) ) Magistrate Judge Susan E. Cox |
| KILILO KIJAKAZI, Commissioner of the Social Security Administration, | ) ) ) |
| Defendant. | ) ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Farzad K.[1] ("Plaintiff") appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for disability insurance benefits ("DIB") under the Social Security Act. The Parties have filed cross motions for summary judgment.[2] For the reasons detailed below, the Commissioner's Motion for Summary Judgment (dkt. 32) is denied and Plaintiff's motion (dkt. 27) is granted. The case is remanded for further proceedings consistent with this opinion.

**I. Background**

On May 5, 2017 Plaintiff filed claims for DIB with an onset date of September 3, 2015. (R.15.) The claim was denied initially and upon reconsideration, after which Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"). The hearing was held on December 20, 2018. (R. 15.) On March 20, 2019, ALJ Kimberly Cromer denied Plaintiff's claim, finding him not disabled under the Act and therefore ineligible for benefits. (R. 15-29.) The Appeals Council denied Plaintiff's request for review on March 17, 2020 (R. 1-5), leaving the ALJ's decision as the

---

[1] In accordance with Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff only by his first name and the first initial of his last name(s).

[2] Plaintiff filed a Memorandum in Support of Summary Remand (Dkt. 27), which this Court construes as a motion for summary judgment.

final decision of the Commissioner, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

The ALJ issued a written decision on March 20, 2019, following the five-step analytical process required by 20 C.F.R. § 416.920. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since September 3, 2015. (R. 17.) At step two, the ALJ concluded that Plaintiff has the severe impairments of morbid obesity, arthritis, asthma/chronic obstructive pulmonary disease, anxiety and depression. (R. 17.) At step three, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of a listed impairment. (R. 18.) The ALJ next found that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work with the following restrictions: no climbing of ladders, ropes, or scaffolds; occasional climbing of ramps or stairs; occasional balancing, stooping, crouching, kneeling, but no crawling; occasional operation of foot controls and bilateral reaching overhead; no working in environments of unprotected heights or around hazardous machinery and environments of concentrated exposure to vibration; limited to simple routine tasks with no work with general public as part of his routine job duties and only occasional interaction with coworkers and supervisors; no fast-paced production such as assembly lines or work where the machine sets the pace, but must be allowed to work at a variable rate; no strict hourly production requirements, only end-of-the-day work goals and no tandem tasks. (R. 21-22.) At step four, the ALJ concluded that Plaintiff was able to perform his past relevant work as an assembler. (R. 28.) Although not necessary after the step four finding, the ALJ determined that, in light of Plaintiff's age, education, work experience and RFC, there are jobs that exist in significant numbers in the national economy that he can perform. (R. 28-29.) These findings led to the conclusion that Plaintiff is not disabled as defined by the Social Security Act. (R. 29.)

As part of the written opinion, the ALJ discussed Plaintiff's lengthy medical history, which includes longstanding degenerative disc disease in his spine with radiculopathy as well as knee cartilage surgery. (R. 378, 401, 489, 500, 2499.) On September 3, 2015, Plaintiff was also involved in an armed robbery while at work at a convenience store and was hit in the head with a shotgun; he lost consciousness, and medical records around the incident indicate that Plaintiff suffered from post-concussion syndrome and the accompanying symptoms (*e.g.*, vision changes, sensitivity to light, and headaches). (R. 841-49.) Additionally, Plaintiff suffered from problems in both shoulders; MRIs showed severe acromioclavicular joint hypertrophy, chronic type tearing on the anterior labrum and undersurface fraying of the supraspinatus in the right shoulder, and showed moderate tendinosis with partial thickness bursal surface tear of the posterior supraspinatus and moderate acromioclavicular joint disease in the left shoulder. (R. 415-16, 427-29.) Ultimately, he had to have surgery on both shoulders, but continued to report pain and numbness following surgery. (R. 859-61, 877-78.)

Meanwhile, Plaintiff's back continued to deteriorate. Diagnostic imaging showed degenerative disc disease at L2-L3 and a bulging disc at L4-L5; he was diagnosed with lumbar radiculopathy and received injections to relieve his pain. (R. 930, 1935.) Plaintiff also had hip injuries. An x-ray and an MRI showed degenerative changes in his hips and bilateral sacroiliac joints, and possible tear of the anterior/superior labrum. (R. 1936, 1999.) In September 2018, Plaintiff underwent a left hip arthroscopy with labral repair, acetabuloplasty, and femoroplasty with capsular closure; however, Plaintiff continued to complain of sharp groin pain in the months following the surgery. (R. 2965-67, 3396.)

Plaintiff also has mental impairments. Shortly following the armed robbery, Plaintiff began relating flashbacks, nightmares, and confusion to his primary care doctor. (R. 527, 538.) He was diagnosed with post-traumatic stress disorder ("PTSD"). (R. 538.) Beginning in August 2017, Plaintiff began regular therapy sessions with Hank Exline, MSW, who noted PTSD and depression,

including nightmares and sleeplessness. (R. 2196.) Plaintiff attended weekly therapy sessions with Mr. Exline, who produced detailed notes regarding Plaintiff's symptoms, diagnoses, and progress. (R. 2196-2225.)

Mr. Exline provided two Mental Capacity Assessments as part of the record, both of which were co-signed by a physician's assistant. The first, from January 2018, indicated that Plaintiff had moderate limitations in the following areas: the ability to ignore or avoid distractions while working, understand and respond to social cues, respond to requests, suggestions, criticism, correction, and challenges, and to keep social interactions free of excessive irritability, sensitivity, argumentativeness, or suspiciousness; Mr. Exline found marked limitations in the following areas: the ability to manage psychologically based symptoms and handle conflicts with others.[3] (R. 2404-2406.) The second form from March 2018 had the same boxes checked but included more narrative detail. For example, Plaintiff was diagnosed with PTSD and major depressive order, and Mr. Exline noted that Plaintiff's inability to concentrate and manage his mental health symptoms significantly affected his "daily functioning," and that his "ability to interact with others has been significantly impaired due to an inability to de-escalate conflicts and respond appropriately to criticism and social cues." (R. 2409-2411.)

The ALJ analyzed Mr. Exline's opinion as follows:

> The statement of claimant's therapist that the claimant is able to perform one or two step instructions and multistep sequence activities is persuasive. It is consistent with the findings on mental status examinations of [two consultative examiners]. The medical records do not demonstrate the significant medical findings to support an inability to engage in sustained work activity. The claimant is able to perform simple repetitive tasks on a sustained basis, as supported by the evaluations of [a consultative examiner]. [The consultative examiner] evaluated the claimant on two occasions and found that the claimant could return to full-time work.

---

[3] Mr. Exline found either mild or no limitations in the remaining areas listed on the form, including the ability to perform one or two step instructions. (R. 2404-2406.)

4

(R. 27.)

The ALJ did not make any mention of Plaintiff's therapy sessions with Mr. Exline or any of Mr. Exline's findings or observations from treatment, other than a brief statement that "[t]he claimant underwent treatment at Family Counseling Services" and an acknowledgement that he "continued under therapy at Family Counseling Services with Hank Exline, MSW, a therapist into 2018." (R. 19-20.)

In this appeal, Plaintiff's argument is limited to his contention that the ALJ erroneously rejected the opinions of Mr. Exline and his primary care doctor.

**II. Social Security Regulations and Standard of Review**

The Social Security Act requires all applicants to prove they are disabled as of their date last insured to be eligible for disability insurance benefits. ALJs are required to follow a sequential five-step test to assess whether a claimant is legally disabled. The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; and (3) whether the severe impairment meets or equals one considered conclusively disabling such that the claimant is impeded from performing basic work-related activities. 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920(a)(4)(i)-(v). If the impairment(s) does meet or equal this standard, the inquiry is over and the claimant is disabled. 20 C.F.R. § 416.920(a)(4). If not, the evaluation continues and the ALJ must determine (4) whether the claimant is capable of performing his past relevant work. *Cannon v. Harris*, 651 F.2d 513, 517 (7th Cir. 1981). If not, the ALJ must (5) consider the claimant's age, education, and prior work experience and evaluate whether she is able to engage in another type of work existing in a significant number of jobs in the national economy. *Id*. At the fourth and fifth steps of the inquiry, the ALJ is required to evaluate the claimant's RFC in calculating which work-related activities she is capable of performing given his limitations. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). In the final step, the burden shifts to the Commissioner to show

5

there are significant jobs available that the claimant is able to perform. *Smith v. Schweiker*, 735 F.2d 267, 270 (7th Cir. 1984).

In disability insurance benefits cases, a court's scope of review is limited to deciding whether the final decision of the Commissioner of Social Security is based upon substantial evidence and the proper legal criteria. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). Substantial evidence exists when a "reasonable mind might accept [the evidence] as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). While reviewing a commissioner's decision, the Court may not "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Young*, 362 F.3d at 1001. Although the Court reviews the ALJ's decision deferentially, the ALJ must nevertheless "build an accurate and logical bridge" between the evidence and his conclusion. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (internal citation omitted). Even where "reasonable minds could differ" or an alternative position is also supported by substantial evidence, the ALJ's judgment must be affirmed if supported by substantial evidence. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008); *Scheck*, 357 F.3d at 699. On the other hand, the Court cannot let the Commissioner's decision stand if the decision lacks sufficient evidentiary support, an adequate discussion of the issues, or is undermined by legal error. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535,539 (7th Cir. 2003); *see also*, 42 U.S.C.§ 405(g).

**III. Discussion**

The ALJ's rejection of Mr. Exline's opinion is not based on substantial evidence and requires remand. For claims filed after March 27, 2017, the old "treating physician rule"[4] has been replaced by 20 C.F.R. § 404.1520c. Treating physicians' opinions are no longer entitled to presumptive controlling weight; the Commissioner "will not defer or give any specific evidentiary weight,

---

[4] 20 C.F.R. § 404.1527.

including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a). Now, the Commissioner does not "articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your record;" instead, the ALJ "will articulate how [the ALJ] considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in" the regulation. 20 C.F.R. § 404.1520c(b)(1). Consistency and supportability "are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be," and, "[t]herefore we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision." 20 C.F.R. § 404.1520c(b)(2). The ALJ may consider the other factors (*e.g.*, the treating relationship or the provider's specialty), but is not required to do so. *Id.* Regarding the consistency factor, the regulation states "[t]he more consistent a medical opinion . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion . . . will be." 20 C.F.R. § 404.1520c(c)(2).

The entirety of the ALJ's discussion of consistency regarding Mr. Exline's opinion is the observation that "[t]he medical records do not demonstrate the significant medical findings to support an inability to engage in sustained work activity," and a citation to the consultative examiner's finding that Plaintiff is able to perform simple repetitive tasks. "Though the ALJ need not discuss every shred of evidence in the record, she 'may not ignore an entire line of evidence' that runs contrary to her conclusions." *McNeal v. Colvin*, 2016 WL 1594992, at *7 (N.D. Ill. Apr. 21, 2016) (quoting *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003)).

Here, the ALJ ignored all the evidence from Mr. Exline's therapy treatment with Plaintiff. Although she acknowledged Plaintiff treated with Mr. Exline for weekly therapy, there is no

discussion of what those mental health records show.[5] As such, the ALJ did not adequately analyze how consistent Mr. Exline's opinions are "with the evidence from other medical sources and nonmedical sources in the claim," as required by the regulations on determining the persuasiveness of medical opinions. Without a discussion of that treatment – the diagnoses, the observations, the reported symptoms – the Court cannot find that substantial evidence supports the ALJ's conclusion that Mr. Exline's opinion was inconsistent with the record. In order to make a finding that a medical opinion is consistent (or inconsistent) with the evidence from other medical sources, there has to be a collection of documents against which the opinion is being compared. The Court recognizes that the ALJ compared Mr. Exline's opinion against the mental status examinations by the consultative examiners. However, the lion's share of the relevant documents relating to Plaintiff's mental health treatment come from Mr. Exline and the other practitioners at Family Counseling Services. The ALJ's failure to examine these records is more than a decision not to discuss a "shred of evidence," but instead amounts to a failure to analyze one of the most crucial swaths of record regarding Plaintiff's mental health conditions.[6] Without an understanding of those documents and a comparison of Mr. Exline's opinions against those documents, the Court cannot meaningfully review the ALJ's finding that Mr. Exline's opinions were inconsistent with the record. In short, there is not substantial evidence to support the ALJ's finding that Mr. Exline's opinions regarding Plaintiff's mental health conditions are inconsistent with the record, and remand is required for a more robust discussion of the mental health treatment notes in this case.

**IV. Conclusion**

For the foregoing reasons, the Commissioner's Motion for Summary Judgment (dkt. 32) is

---

[5] Additionally, there were several other mental health care providers at Family Counseling services, including Cindy Cook, MHP; Andrea Craig, QMHP; Justin Jelinski, LPA, QMHP, MA; and Lorena Perez, QMHP, MA. (R. 2178-2238.)
[6] The Court is slightly puzzled by the ALJ's decision not to discuss the extremely relevant records from Family Counseling Services, as the remainder of the ALJ's opinion did an admirable job thoroughly analyzing the voluminous medical records in this case.

denied and Plaintiff's motion (dkt. 27) is granted. The case is remanded for further proceedings consistent with this opinion.

Entered: 10/13/2021

_____
U.S. Magistrate Judge, Susan E. Cox